OPINION OF THE COURT
Per Curiam.
Orders dated November 7, 2008 and February 11, 2009, to the extent appealable, affirmed, with $10 costs. Appeal from that portion of the order dated February 11, 2009 denying tenants’ motion for reargument, dismissed, without costs, as taken from a nonappealable order.
We agree that this holdover eviction proceeding, based upon allegations that tenants violated house rules and their proprietary lease by having “kept or harbored” a dog in the demised cooperative apartment premises, is not susceptible to summary dismissal. In a moving affidavit submitted on their initial motion to dismiss the petition tenants, husband and wife, alleged that the dog — a Maltese named “Rocky” — is owned by their adult daughter and resides in her nearby apartment, and that the dog merely “visits” tenants in the subject apartment at unspecified times and unstated intervals.* Tenants’ moving submission also included affidavits from several neighboring tenants who attested, in identical, unelaborated statements, that Rocky’s visits occurred on a “daily” basis. These broad, unpar *81 ticularized allegations, lacking evidentiary detail as to the nature and extent of the dog’s presence in tenants’ apartment or its schedule of supposed visits, fell far short of meeting tenants’ burden to eliminate all triable issues as to whether they kept or harbored the dog in violation of the proprietary lease terms. Nor did tenants’ reply affidavit, even if properly considered (cf. Jackson-Cutler v Long, 2 AD3d 590 [2003]), cure the deficiency. Indeed, the factual averments set forth therein, acknowledging that the dog is generally walked “three times a day while visiting [tenants] . . . after lunch, at approximately 5:00 - 5:30 p.m., and less frequently at 9:00 and/or 11:00 p.m.,” actually tend to support a finding that the dog’s visits are regular and reoccurring, and thus buttress the landlord’s contention that tenants materially breached the no-pet provisions of the proprietary lease.
It need be emphasized that the relevant inquiry in this case centers not on whether the dog sleeps or resides (primarily or otherwise) in tenants’ apartment nor on who owns the dog (see generally Dufour v Brown, 66 AD3d 1217 [2009]). Had the parties intended to limit the definitional reach of the terms “kept or harbored” to those animals who reside with and/or are owned by tenants, they could have included specific language to that effect in the proprietary lease agreement. Nor may we engraft such a limitation upon the chosen language of the lease under the guise of judicial interpretation. Were we to do so, these and other similarly situated tenants could too easily circumvent an otherwise enforceable lease provision barring pets through gamesmanship or artifice. Instead, our inquiry is more properly focused on whether the dog’s presence in tenants’ apartment is sufficiently frequent and substantial as to establish that tenants “kept” or “harbored” the dog as those terms are ordinarily used, viz., whether tenants “possessed]” or “ha[d] the care of’ the animal or “ha[d] [it] in [their] keeping” (Webster’s Third New International Dictionary 1235, 1031 [2002]). Proper resolution of that fact-laden issue must await further evidentiary development at trial. The record also raises but does not resolve several mixed questions of law and fact, including whether landlord timely commenced its eviction proceeding (see Administrative Code of City of NY § 27-2009.1 [b]), and whether the dog, if found to have been kept or harbored in tenants’ apartment, was an emotional support or service animal necessary to accommodate any disability that tenant Rita Hyman may be found to suffer.
*82 Turning to tenants’ remaining contentions, we find no abuse of discretion in the denial of tenants’ application to stay this summary proceeding pending determination of a housing discrimination complaint contemporaneously filed by tenants with the State Division of Human Rights (see UM Realty, L.L.C. v Myers, 2002 NY Slip Op 50704[U] [2002]; Ennismore Apts. v Gottlieb, NYLJ, Sept. 24, 1992, at 24, col 5 [App Term, 1st Dept]). On balance, and weighing the relevant factors (see Gallo v Mayer, 50 Misc 2d 385 [1966], affd 26 AD2d 773 [1966]), we agree that the “summary” remedy made available by RPAPL article 7 should not be delayed indefinitely while tenants’ agency complaint wends its way through the administrative process, particularly given the numerous and varied issues framed by the parties unrelated to any claim of discrimination. Nor did the court abuse its discretion in granting landlord’s motion to disqualify tenants’ attorney — the daughter who, tenants claim, owns the dog in question — since it is clear that she is likely to be a key evidentiary witness at trial (see Code of Professional Responsibility DR 5-102 [a] [22 NYCRR 1200.21 (a)]; Lewis v Goldberg, 6 AD3d 395 [2004]).

 It appears that a second dog, Vegas, also purportedly owned by tenants’ daughter, accompanies Rocky on his visits to tenants’ apartment. No breach of lease claim is advanced by landlord with respect to Vegas, nor do tenants assert that the absence of any such claim defeats or impairs landlord’s right to object to Rocky’s presence.